**Fanny Fern WEYMOUTH et al.**

v.

**COLORADO INTERSTATE GAS COMPANY.**

Civ. No. 2963.

United States District Court
N. D. Texas,
Amarillo Division.

Oct. 2, 1962.

Culton, Morgan, Britain & White, Amarillo, Tex., for plaintiffs.

Holland & Hart, James L. White, Denver, Colo., Lewis M. Poe, Robert R. McCracken, Colorado Springs, Colo., Folley, Snodgrass & Calhoun, Amarillo, Tex., for defendant.

BREWSTER, District Judge.

The motion for new trial filed by the plaintiffs complains, among other things, of the admission of the testimony of the defendant's witness, A. M. Melton, as to actual prices paid during the time in question by several other major pipelines for gas at the mouth of the well in the West Panhandle Field and in other fields claimed to be comparable. This complaint extends to the admission of charts prepared by Melton graphically showing such prices.

This is a case of more than usual importance. The questions involved may affect obligations connected with the production of gas in the future on the Masterson Ranch in the West Panhandle Field, as well as settle the obligations of the parties in connection with past production. The disposition of several other similar cases on the docket of this Court in the Amarillo Division, by settlement or otherwise, may possibly be affected by the outcome of this case. For those reasons, the parties hereto were given full opportunity to present briefs and reply briefs before the motion was heard on September 4, 1962, and also the requested additional time thereafter to file more briefs in light of matters that arose during the hearing of the motion.

In view of the fact that there will be another trial on one of the issues, it is deemed advisable to record the reasons for the ruling on the motion.

One of the material issues in the case is shown by the following question submitted in connection with the charge and the answers of the jury thereto:

"QUESTION NO. 3: What do you find from a preponderance of the evidence was the market value, at the mouth of the well, of natural

gas on the Masterson Ranch during the years 1957, 1958, 1959, 1960 and 1961?

"*Answer:*

"For the year 1957 10 cents per Mcf.

"For the year 1958 10 cents per Mcf.

"For the year 1959 12 cents per Mcf.

"For the year 1960 12 cents per Mcf.

"For the year 1961 12 cents per Mcf."

Prior to the time Melton was placed on the stand, the evidence as to market value had come from witnesses who had qualified as experts. The defendant began the direct examination of Melton by showing his extensive experience covering about 24 years in working with gas and pipe line companies in various capacities, including that of supervisor of all payments for purchases of gas by Colorado Interstate Gas Company for the eight years preceding the trial. He was then asked whether he knew of his own knowledge the prices that were paid by the major pipe line companies at the mouths of the wells in the West Panhandle and comparable fields for gas produced and purchased by them during the years 1957, 1958, 1959, 1960 and 1961. That approach was the same, in effect, as the one followed in qualifying the other expert witnesses on market value; and the Court therefore assumed that this witness was being offered as an expert on values, when he overruled the plaintiffs' objections to the testimony and evidence in question. Under the circumstances, the Court was of the opinion that evidence of comparable purchases of gas at the mouth of the well was admissible to show the basis for the opinion as to market value it then appeared that this witness would be called upon to give as an expert under the rule announced in International Paper Co. v. United States, 5 Cir., 227 F.2d 201, and Hays v. State, Tex.Civ.App., 342 S.W.2d 167, writ refused, n. r. e., and State v. Oakley, Tex.

S.Ct., 356 S.W.2d 909. However, this witness, though apparently qualified as an expert on direct examination, was never asked for an opinion on market value; so the reason for which the evidence was admitted failed.

■ ■ Hays v. State, supra, 342 S. W.2d at pp. 170–171, cited by the Supreme Court in the Oakley case, gives the following summary of all of the grounds recognized by the state courts in Texas for admitting evidence of the nature under discussion here:

"Evidence of sales of comparable properties may be offered under three conditions: (I) on direct examination of expert or lay witnesses as independent substantive evidence of the value of the property to which the comparison relates, or (II) on direct examination of the value-witness to give an account of the factual basis upon which he founds his opinion on the issue of value of the real estate in controversy, or (III) on cross-examination of the value-witness to test his knowledge, experience and investigation and thus affect the weight to be given to his opinions. Condition (III) will not be discussed since not involved here, and the right to elicit such evidence on cross-examination is generally accepted. 19 Tex.Jur. pp. 233–234; Stewart v. Commonwealth of Kentucky, Ky., 337 S.W.2d 880."

While Melton testified on direct examination, shortly prior to the Court's rulings on the plaintiffs' objections, that he knew of his own knowledge the prices about which he was being interrogated, his admissions on cross-examination show conclusively that he did not have such first-hand knowledge. Such admissions therefore prohibit the Court from now holding that the evidence in question was admissible under the first classification given in the above quotation from the Hays case. In justice to this witness, it ought to be said that his statement on direct examination about his own knowledge of the matters arose from his lack of understanding about the

meaning of the question, rather than from any intention to misrepresent the facts.

The Court is of the opinion that the admission of the testimony of Melton as to prices being paid for gas at the mouth of the wells in the West Panhandle and other comparable fields and of his exhibits supporting such testimony was prejudicial error. However, such evidence affected only the issue of market value, at the mouth of the well, of natural gas on the Masterson Ranch during the years 1957, 1958, 1959, 1960 and 1961. The other matters complained of in the plaintiffs' motion do not present prejudicial error.

It is therefore ordered that a new trial be and the same is hereby granted on such issue of market value, and that, except as to such issue, the plaintiffs' motion for new trial is hereby overruled, this 2nd day of October, 1962.